UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

**CONNIE MARIE STAGGS**                                                      **PLAINTIFF**

V.                              NO. 1:16CV00118-JTR

**NANCY A. BERRYHILL,**[1]
**Acting Commissioner,**
**Social Security Administration**                                           **DEFENDANT**

## ORDER

**I.   Introduction:**

Plaintiff, Connie Marie Staggs, applied for disability income benefits on January 31, 2014, alleging her disability began on February 10, 2013. (Tr. at 12). Her claims were denied initially and upon reconsideration. *Id.* After conducting a hearing, the Administrative Law Judge ("ALJ") denied her application. (Tr. at 21). The Appeals Council denied her request for review. (Tr. at 1). The ALJ's decision now stands as the final decision of the Commissioner, and Staggs has requested judicial review.

For the reasons stated below, the Court [2] affirms the decision of the Commissioner.

---

[1] Berryhill is now the Acting Commissioner of Social Security and is automatically substituted as Defendant pursuant to Fed. R. Civ. P. 25(d).

[2] The parties have consented in writing to the jurisdiction of a United States Magistrate Judge.

## II. The Commissioner's Decision:

The ALJ found that Staggs last met the insured status requirements of the Social Security Act on December 31, 2014, so she would have to prove disability before that date. (Tr. at 14). He also found that she had not engaged in substantial gainful activity since the alleged onset date of February 10, 2013. *Id.* At Step Two of the five-step analysis, the ALJ found that Staggs has the following severe impairments: history of cerebral hematoma status post suboccipital craniectomy; neurocognitive disorder; and adjustment disorder with depressed mood. *Id.*

After finding that Staggs's impairments did not meet or equal a listed impairment (Tr. at 14), the ALJ determined that Staggs had the residual functional capacity ("RFC") to perform the full range of light work, except that: (1) she could only occasionally stoop, crouch, bend, kneel, crawl, and balance; (2) she could not work from ropes, ladders, scaffolding, or unprotected heights; and (3) she would be limited to work which is simple, routine, and repetitive with supervision that is simple, direct, and concrete. (Tr. at 16). Next, the ALJ found that Staggs was not capable of performing her past relevant work. (Tr. at 19-20). At Step Five, the ALJ relied on the testimony of a Vocational Expert ("VE") to find that, based on Staggs's age, education, work experience and RFC, jobs existed in significant numbers in the national economy that she could perform at the light level, with the added

limitations. Those jobs included housekeeping cleaner and fountain server. (Tr. at 20). Thus, the ALJ concluded that Staggs was not disabled. *Id.*

## III. Discussion:

### A. Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d. at 477.

3

B. Staggs's Arguments on Appeal

Staggs argues that substantial evidence does not support the ALJ's decision to deny benefits. She contends that the ALJ erred by not finding hypertension to be a severe impairment, and that the Appeals Council should have remanded the case based on evidence submitted after the hearing decision.

The claimant has the burden of proving that an impairment is severe, which by definition significantly limits one or more basic work activities. *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); 20 C.F.R. § 404.1521(a). If the impairment would have no more than a minimal effect on the claimant's ability to do work, then it does not satisfy the requirement of Step Two. *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007).

The relevant time period for this case is February 10, 2013 (the alleged onset date) through December 31, 2014 (the date last insured). Staggs's application for benefits listed dizziness and nausea as disabling conditions, but it did *not* specifically mention hypertension. (Tr. at 52, 81). To control her hypertension, Staggs took Lisinopril and Atenolol over the relevant time period. (Tr. at 185).[3]

---

[3]Additionally, one doctor told her to take over-the-counter medication for her dizzy spells,

Staggs did not complain that the medications she took for hypertension were not effective, and she did not exhibit significant symptoms related to hypertension. Impairments that are controllable or amenable to treatment do not support a finding of total disability. *Mittlestedt v. Apfel,* 204 F.3d 847, 852 (8th Cir. 2000). She did not require more than conservative treatment (only medication), and there is no evidence that she regularly saw a doctor or specialist for hypertension. The need for only conservative treatment contradicts allegations of disability. *Smith v. Shalala*, 987 F.2d 1371, 1374 (8th Cir. 1993). No doctor placed restrictions on Staggs based on the condition. A lack of physician-imposed restrictions may serve as a reason to discredit a claimant's credibility. *Hensley v. Barnhart*, 352 F.3d 353, 357 (8th Cir. 2003). Finally, the ALJ *did* incorporate postural limitations in the RFC which accounted for any alleged effects of hypertension, like dizziness and balance problems. (Tr. at 16).

Staggs's primary medical condition arose from an aneurysm, or cerebellar bleed, that she had on February 10, 2013. (Tr. at 235, 247). At that time, she underwent a suboccipital cranioectomy and clot removal at UAMS, performed by Dr. John Day, M.D. (Tr. at 281-285). Staggs stayed in the hospital for nine days, but

---

but at the time of the hearing, Staggs was not taking such medication. (Tr. at 41). A failure to follow a recommended course of treatment weighs against a claimant's credibility. *Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005).

upon discharge, her CT brain scans looked good, her speech and writing were intelligible, her memory was 100% accurate, and her problem solving was in the normal range. (Tr. at 367). On April 16, 2013, a CT scan of her brain showed continued improvement and no evidence of obstructive hydrocephalus. (Tr. at 384). Staggs saw Dr. Day for the last time on July 9, 2013, at which time he said she was doing "exceptionally well" and had made a "terrific recovery." (Tr. at 392). He noted some balance issues but only recommended follow-up treatment as needed. *Id.*

State agency medical consultants found minimal limitations. Consulting physical examiner, Dr. Anandaraj Subramanium, M.D., found normal neurological reflex exam, normal gait and coordination, and negative straight-leg raise. (Tr. at 415-416). While Staggs had a positive Romberg's test, she had no muscle spasm, muscle atrophy, or sensory abnormalities. *Id.* Dr. Subramanium imposed moderate postural limitations, and the ALJ assigned some weight to that opinion based on mild to moderate findings in the rest of the record. (Tr. at 18, 417). The ALJ likewise included postural limitations in the RFC.

Staggs underwent consultative psychiatric examinations on August 22, 2013, and March 5, 2014. (Tr. at 393, 406). The examiners found few limitations in workplace mental function (Tr. at 401-402, 409-410), and Staggs's ability to undertake multiple activities of daily living suggest she is employable. (Tr. at 15,

188-189, 409). At the hearing, she indicated she could probably engage in at least part-time work. (Tr. at 44). Based on Staggs's performance on mental acuity exams, the consulting examiners found some limitation in persistence, focus, and pace. (Tr. at 402-403, 410). Those limitations are accurately reflected in the RFC assigned by the ALJ.

After the ALJ entered his decision (Tr. 12-21), Staggs submitted evidence to the Appeals Council from Dr. Bethany Knight, M.D.. (Tr. at 27-28). The two letters from Dr. Knight were dated March 14, 2016, and March 30, 2016, after the relevant time period for disability determination. *Id*. With no elaboration or citation to treatment records, Dr. Knight concluded that Staggs was unable to work. *Id*. Dr. Knight's opinion on Staggs's ability to work involves an issue reserved for the Commissioner, and therefore is not entitled to controlling weight. *Stormo v. Barnhart*, 377 F.3d 801, 805 (8th Cir. 2004).

The Appeals Council must consider evidence submitted with a request for review if it is "(a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." *Box v. Shalala*, 52 F.3d 168, 171 (8th Cir. 1995) (*quoting Williams v. Sullivan*, 905 F.2d 214, 216-17 (8th Cir. 1990)). Whether evidence meets these criteria is a question of law this Court reviews de novo. *Id*. The Appeals Council determined that the letters from Dr. Knight did not pertain to the relevant

time period, which closed fifteen months prior to the dates on the letters. (Tr. at 2). Moreover, there are few treatment records from Dr. Knight to establish any longitudinal relationship, and Dr. Knight does not support her conclusions with objective medical evidence or documentation. The Appeals Council considered the record as a whole, including the new evidence, and declined review of Staggs's appeal. (Tr. at 1).

When the Appeals Council has considered material new evidence and declined review, the ALJ's decision becomes the final action of the Commissioner. *See Piepgras v. Chater*, 76 F.3d 233, 238 (8th Cir. 1996) (*citing Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). On appeal, the Court's task is to decide whether the ALJ's decision is supported by substantial evidence in the record as a whole, including any *new evidence* deemed relevant and material by the Appeals Council. *Browning*, 958 F.2d at 823.

Dr. Knight's two short letters do not outweigh the wealth of objective evidence providing for a finding of "not disabled." The ALJ's decision was supported by substantial evidence, notwithstanding the evidence submitted to the Appeals Council.

## IV. <u>Conclusion</u>:

Substantial evidence in the record supports the Commissioner's decision to

deny benefits. The ALJ properly considered Staggs's hypertension, and the Appeals Council properly reviewed the entire record, including new evidence, in affirming the ALJ's decision.

IT IS THEREFORE ORDERED that the final decision of the Commissioner is AFFIRMED, and Staggs's Complaint is DISMISSED, with prejudice.

DATED this 13th day of November, 2017.

_____
UNITED STATES MAGISTRATE JUDGE